**EXHIBIT A**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Istony Marcelon ("Marcelon") and Phoenix Management Services, Inc. ("Phoenix"), and they agree to the terms and conditions set forth below:

**WHEREAS**, Marcelon was previously employed by Phoenix;

**WHEREAS**, on or about March 11, 2020, Marcelon filed a lawsuit claiming overtime violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") in the United States District Court, Southern District of Florida, entitled *Istony Marcelon v. Phoenix Management Services, Inc.*, Case No. 0:20-cv-60527-WPD (the "Action");

**WHEREAS**, Phoenix has denied and continues to deny the claims and allegations asserted in the Action and any wrongdoing whatsoever;

**WHEREAS**, the parties wish to settle their differences and resolve any and all disputes and obligations between them, including without limitation, all claims that were or could have been raised in the Action and any and all claims arising from Marcelon's employment with, and/or separation from, Phoenix;

**THEREFORE**, in consideration of the covenants and mutual promises contained in this Agreement, the parties agree as follows:

1. **Recitals.**

The above recitals are true and correct and are incorporated herein by reference for all purposes.

2. **Obligations of Phoenix.**

In consideration of Marcelon's obligations set forth below and to avoid any further expenses associated with the costs of litigation:

a.  Phoenix agrees that, along with other good and sufficient consideration for this Agreement, Marcelon will be paid, within twenty (20) business days of (1) Marcelon's execution of this Agreement, and predicated on Marcelon not revoking the Agreement, as set forth in paragraph 6(f), *infra*, and (2) the Court's entry of an order approving this settlement agreement and full dismissal of this Action with prejudice, total funds in the gross amount of Nine Thousand Dollars and Zero Cents ($9,000.00) (the "Settlement Funds"), which shall be issued as follows:

(i)  one check made payable to Istony Marcelon in the gross amount of $2,500.00, representing all of Mr. Marcelon's alleged unpaid overtime wages, for which Marcelon will receive a Form W-2;



Marcelon *IM*
Phoenix ___

1

(ii) one check made payable to Istony Marcelon in the amount of $2,500.00, representing all of Mr. Marcelon's alleged liquidated damages, for which Marcelon will receive a Form 1099; and

(iii) one check made payable to Bober & Bober, P.A., in the $4,000.00 representing all fees and costs incurred in this matter. The Parties hereto agree that the amount negotiated for attorneys' fees was negotiated separately from the amounts paid to Plaintiff, and did not adversely affect Marcelon's recovery.

Marcelon expressly agrees to be solely responsible for any tax liability that may result from payment of any non-wage Settlement Funds, and expressly acknowledges that Phoenix is not liable in any way for any such tax consequences of this settlement. Marcelon agrees to defend, indemnify, and hold harmless Phoenix against any loss or liability whatsoever, including reasonable attorneys' fees, incurred in any action or proceeding, before any court, agency, or arbitrator, to recover any unpaid taxes, penalties, or forfeitures related to the payment of the non-wage checks identified in this Paragraph.

b. As further consideration, Phoenix agrees that if it is contacted by a prospective employer about Marcelon, it will provide the following information: the dates of Marcelon's employment and the last position he held (Maintenance). Marcelon promises that he will advise all prospective employers to contact Sheldon "Shelly" Goldberg, Office: (954) 640-7070, Email: shelly@phoenixfla.com, or his successor, who shall only respond in writing to such inquiries.

c. Sheldon "Shelly" Goldberg shall not disparage Marcelon, directly or indirectly, or say anything negative about Marcelon including, but not limited to, members of the press and media, present and former employees of Phoenix, or any other third persons. As permitted by law such non-disparagement shall expressly include any comments, postings or other communications on social media.

d. Pursuant to *Lynn's Food Stores, Inc. v. U.S. Dep't. of Labor*, 69 F.2d 1350, 1352 (11th Cir. 1982), the parties shall file a Joint Motion for Settlement Approval and Proposed Order Dismissing this Action, and seek the retention of jurisdiction to enforce this Agreement.

e. <u>Release of Plaintiff</u>

The Defendant, on its own behalf and on behalf of each of its successors and assigns, and affiliates (if any), hereby release Marcelon of all claims based in law, equity or otherwise, whether direct or contingent, liquidated or unliquidated, accrued or unaccrued, known or unknown, suspected or unsuspected, actual or potential, asserted or unasserted, patent or latent, matured or unmatured, which the Defendant now owns or holds, have at any time owned or held, or may in the future discover that it had owned or had held against Marcelon. This Agreement is intended to release any and all claims against Marcelon as of the date of this Agreement, without exception.

Marcelon 
Phoenix

3. **Obligations of Marcelon.**

With the sole exception of Marcelon's workers' compensation claims asserted by Marcelon prior to the execution of this Agreement, Marcelon, on behalf of himself, his heirs, executors, administrators, successors, and assigns and all persons who may have a cause of action through him ("Marcelon") completely and forever releases Phoenix and its parents, subsidiaries, affiliates, divisions, successors and assigns, insurers and reinsurers, past and present directors, officers, attorneys (including outside counsel), and employees, and their respective heirs and personal representatives and any related or affiliated entities (collectively, "Phoenix") from any and all claims, known or unknown, including, without exception, those claims that were or could have been asserted in the Action and any other claims arising out of Marcelon's former employment with Phoenix and the separation therefrom, including, but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act ("ADEA"), as amended, and the Older Workers Benefit Protection Act; the Civil Rights Act of 1991; 42 U.S.C. § 1981; the Employee Retirement Income Security Act of 1974, as amended; the Family and Medical Leave Act; the Americans with Disabilities Act of 1990, as amended; the Rehabilitation Act of 1973; the Equal Pay Act; the National Labor Relations Act; the Occupational Safety and Health Act; the Consolidated Omnibus Budget Reconciliation Act; the Genetic Information Non-Discrimination Act of 2008; the Pregnancy Discrimination Act of 1978; the Immigration Reform and Control Act; the Workers Adjustment and Retraining Notification Act; the Fair Credit Reporting Act; Florida Wage Discrimination Law – Fla. Stat. § 448.07; Florida Equal Pay Law – Fla. Stat. § 725.07 and Fla. Stat. Ann. § 448.07; the Florida AIDS Act – Fla. Stat. § 110.1125, § 381.00 and § 760.50; the Florida Domestic Violence Leave Law; Florida Preservation and Protection of the Right to Keep and Bear Arms in Vehicles Act; Florida Discrimination on the Basis of Sickle Cell Trait Law – Fla. Stat. § 448.075 et seq.; Florida OSHA – Fla. Stat. Ann. § 442.018(2); the Florida Civil Rights Act of 1992; Fla. Stat. § 440.205; the Florida Minimum Wage Act; the Florida Whistle Blower's Act; Fla. Stat. § 448.08; any applicable Florida statutes or local ordinances; all laws that govern discrimination involving religion, color, race, sex, pregnancy, sexual harassment, national origin, marital status, genetic information, age, retaliation, handicap, and/or disability; and any other statutory, common law, or public policy claim, whether in tort (including, without limitation, any claim for misrepresentation or fraud, assault, battery, intentional infliction of emotional distress, tortious interference with employment, defamation, invasion of privacy, negligence, or negligent hiring, retention, or supervision) or contract; whether federal, state, or local; whether in law or in equity; whether of any type whatsoever from the beginning of the world to these times present. Marcelon's complete release additionally includes, without limitation, any and all claims for back pay, front pay, attorneys' fees, costs, and expenses. Marcelon expressly intends this release to reach to the maximum extent permitted by law. The above list of statutes is meant to be illustrative, not exhaustive. However, nothing in this Agreement shall be construed to prevent Marcelon from enforcing his rights under this Agreement or from asserting claims for his accrued, vested benefits under any employee benefit plans in accordance with the terms of such plans and applicable law. If any claim is not subject to release, to the extent permitted by law, Marcelon waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party or a proceeding based on such a claim in which Phoenix is a party.

Marcelon *IM*
Phoenix ___

3

Marcelon warrants that, other than the Action, neither he, nor anyone acting on his behalf, has filed any civil action, suit, arbitration, administrative charge or legal proceeding, whether in court or with an administrative agency, against Phoenix and he has not made any assignment or pledge to anyone of any claim against Phoenix. Marcelon further agrees that should any person, organization, or other entity file, charge, claim, sue or cause or permit to be filed any civil action, suit or legal proceeding involving any matter occurring at any time in the past against Phoenix, he will not seek nor accept any personal relief in such civil action, suit or legal proceeding. However, nothing in this Agreement precludes Marcelon from testifying, assisting or participating in any investigation, hearing or proceeding conducted by the EEOC or equivalent agency. Marcelon, waives any right to monetary or other recovery should any claim be pursued by any person, organization or other entity against Phoenix on his behalf arising out of or related to Marcelon's employment or separation from Phoenix.

Notwithstanding anything to the contrary anywhere in this Agreement, nothing in this Agreement shall affect Marcelon's claim for workers' compensation benefits, pending prior to the execution of this Agreement, against Defendant, nor shall anything herein impede his ability to pursue such workers' compensation benefits only.

The Parties intend this Agreement is intended to be a full and complete release of all claims against each other. If the Parties nevertheless initiates a lawsuit against each other in violation of this Agreement, the Parties shall be entitled to damages from one another, including, without limitation, attorneys' fees and costs incurred in enforcing this Agreement.

    a.    Neither Marcelon nor anyone else acting on Marcelon's behalf shall disparage Phoenix or say anything negative about Phoenix including, but not limited to, members of the press and media, present and former employees of Phoenix, or any other third persons. As permitted by law such non-disparagement shall expressly include any comments, postings or other communications on social media.

    c.    If Marcelon should be subpoenaed by a court or administrative agency of competent jurisdiction to testify about his employment with Phoenix or this Agreement, or to produce this Agreement or other documents related to or about his employment with Phoenix, then Marcelon shall be allowed to honor the subpoena as required by law, but only after he has first given notice to: Lindsay M. Massillon, Esq., LMassillon@fowler-white.com; (305) 789-9281 (phone), or her designee, first telephonically within a reasonable time after being served with the subpoena, and as soon thereafter as possible in writing, including a copy of the subpoena, and in any event, before Marcelon testifies or produces any documents in response to the subpoena.

    d.    Except for workers' compensation claims asserted by Marcelon prior to the execution of this Agreement, Marcelon further acknowledges that, after payment of the Settlement Funds, he will not pursue any claims for any other wages (including any overtime), bonuses, and compensation to which he was entitled by virtue of his former employment with



Marcelon _IM_
Phoenix ___

4

Phoenix, as well as any and all leave or other benefits to which he may have been entitled by virtue of his former employment with Phoenix and that, by signing this Agreement, he forever waives any right to any compensation (including any overtime), severance, leave of absence benefits or other payments of any kind from Phoenix. Marcelon represents that he will not seek future employment with Phoenix, and he understands that Phoenix will not employ him if he does seek such employment.

      e.    Nothing herein shall release Phoenix's ability to enforce the terms of this Agreement.

4. **No Admission of Liability.**

The parties acknowledge that this Agreement is not an admission of liability or wrongdoing by anyone, but instead reflects the parties' desire to reach a mutual agreement concerning Marcelon's separation of employment from Phoenix and resolve the matter without additional legal fees and expenses. Phoenix denies any wrongdoing or violation of law. Marcelon forever waives all rights to assert that this Agreement was the result of a mistake in law or in fact. Further, Marcelon forever waives all rights to assert that any or all of the legal theories or factual assumptions used for negotiating purposes are for any reason inaccurate or inappropriate.

5. **Medicare.**

The parties have fully considered Medicare's interest, pursuant to the Medicare Secondary Payer rules, and, in doing so, Marcelon has declared that this claim does not involve any illness, injury, incident or accident in which medical expenses were incurred. Further, Marcelon affirms that he is not Medicare eligible as of the date of execution of this Agreement. This affirmation is a material term of this Agreement and without which Marcelon would not have entered into this Agreement. Furthermore, notwithstanding any provision herein to the contrary, Marcelon does not release any claim he may have against Phoenix for any medical expenses paid by Medicare on his behalf. Accordingly, Medicare has no interest in the payment under this Agreement. If Medicare (or the agency representing Medicare's interest) later determines that it does have an interest in the payment to his under this Agreement, Marcelon will indemnify Phoenix as soon as possible for any payments and/or penalties Phoenix makes to Medicare (or the agency collecting on behalf of Medicare) as a result of the payment under this Agreement.

6. **The ADEA.**

**In accordance with the requirements of the Age Discrimination in Employment Act ("the ADEA"), as amended by the Older Worker Benefit Protection Act of 1990, by signing this Agreement and initialing each page, Marcelon certifies that he understands this Agreement and acknowledges the following:**

    (a)    **He has carefully read and fully understands all of the provisions of this Agreement;**

Marcelon _TM_  
Phoenix ___

5

(b) He understands and agrees that he has been given a reasonable period of time (up to 21 days) from receipt of this Agreement to consider its terms before signing it;

(c) He has been encouraged to review this Agreement with an attorney of his choice and he, in fact, did so;

(d) He understands that this Agreement does not cover rights or claims that may arise after he signs this Agreement;

(e) He agrees to the terms of this Agreement knowingly, voluntarily, and without intimidation, coercion or pressure and intend to be legally bound by this Agreement; and

(f) He is advised and understands that after he signs this Agreement, he has seven (7) days from the date he signs the Agreement, to revoke the release of any age discrimination claim ("the Waiting Period"). ANY REVOCATION WITHIN THIS SEVEN DAY PERIOD MUST BE SUBMITTED IN WRITING TO: (1) LINDSAY M. MASSILLON, ESQ., FOWLER WHITE BURNETT, P.A., 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131, FAX NO. 305-728-7554, AND (2) STATE: I HEREBY REVOKE MY ACCEPTANCE OF OUR SETTLEMENT AGREEMENT." THE REVOCATION MUST BE PERSONALLY DELIVERED OR SENT BY FACSIMILE AS STATED ABOVE. MARCELON UNDERSTANDS THAT IN THE EVENT HE EXERCISES HIS RIGHT OF REVOCATION, THIS AGREEMENT SHALL BECOME NULL AND VOID IN ITS ENTIRETY AND THE AGREEMENT IS NEITHER EFFECTIVE NOR ENFORCEABLE UNTIL THE EXPIRATION OF THE WAITING PERIOD.

7. **General Terms.**

a. The parties affirm that the terms stated in this Agreement are the only consideration for them to sign this Agreement, and no other promise or agreement of any kind has been made to or with them by any person or entity whomsoever to cause them to execute this Agreement, and that they fully understand the meaning and intent of this Agreement, including but not limited to its final and binding effect. This Agreement contains the entire agreement between the parties and replaces any and all prior contracts, agreements, or understandings between the parties arising out of or relating to Marcelon's employment with, and separation from, Phoenix. This Agreement may only be changed in a writing signed by both Phoenix and Marcelon.

b. This Agreement shall be construed, enforced and interpreted in accordance with the laws of the State of Florida, without regard to Florida's conflict of laws principles. The Parties shall request, as a condition of settlement, that the U.S. District Court retain jurisdiction to enforce the terms of this Agreement. In the event the Court declines to retain jurisdiction, the exclusive venue for any action to enforce or construe the Agreement shall be in Broward County, Florida. Marcelon specifically consents to personal jurisdiction in this venue. **THE PARTIES**

Marcelon _I M_
Phoenix ___

6

SPECIFICALLY WAIVE ANY RIGHT TO A JURY TRIAL IN THE EVENT OF A LEGAL ACTION TO ENFORCE THIS AGREEMENT.

    c.    If one or more provisions of this Agreement is held to be unenforceable, the remaining provisions nonetheless shall be enforced to the maximum extent possible.

    d.    If any legal action, proceeding or hearing is brought by any party to this Agreement to enforce the terms and conditions of this Agreement, then the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.

    e.    This Agreement is binding upon, and shall inure to the benefit of, the parties and their respective heirs, executors, administrators, successors and assigns.

8. **Counterparts.**

This Agreement may be executed in counterparts, and if so executed each such counterpart shall have the force and effect of an original. The person(s) signing this Agreement on behalf of Phoenix is authorized to do so.

ISTONY MARCELON AFFIRMS THAT: (1) HE HAS CAREFULLY READ THIS AGREEMENT AND KNOWS AND UNDERSTANDS ITS CONTENTS, (2) HE HAS BEEN ADVISED OF HIS RIGHT TO CONSULT WITH AN ATTORNEY ABOUT THIS AGREEMENT, (3) HE HAS BEEN GIVEN A REASONABLE PERIOD OF TIME WITHIN WHICH TO CONSIDER THIS AGREEMENT, (4) HE ENTERS INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY, AND (5) HE INDICATES HIS CONSENT AND AGREEMENT BY INITIALING EACH PAGE AND SIGNING THE SIGNATURE PAGE.

_____ (Marcelon)
ISTONY MARCELON
Date: 8-17-2020

Phoenix Management Services, Inc.    (Phoenix)

By: _____
Name: _____
Title: _____
Date: _____

Marcelon _IM_
Phoenix ___

**Twenty One (21) Day Waiver**

I, ISTONY MARCELON, hereby acknowledge that I have been granted up to 21 days to consider this agreement, and that I have elected to waive the remaining portion of that period and execute the document on this date.

_____  8-17-2020
ISTONY MARCELON                     Date

Marcelon  *I.M*
Phoenix

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Istony Marcelon ("Marcelon") and Phoenix Management Services, Inc. ("Phoenix"), and they agree to the terms and conditions set forth below:

**WHEREAS**, Marcelon was previously employed by Phoenix;

**WHEREAS**, on or about March 11, 2020, Marcelon filed a lawsuit claiming overtime violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") in the United States District Court, Southern District of Florida, entitled *Istony Marcelon v. Phoenix Management Services, Inc.*, Case No. 0:20-cv-60527-WPD (the "Action");

**WHEREAS**, Phoenix has denied and continues to deny the claims and allegations asserted in the Action and any wrongdoing whatsoever;

**WHEREAS**, the parties wish to settle their differences and resolve any and all disputes and obligations between them, including without limitation, all claims that were or could have been raised in the Action and any and all claims arising from Marcelon's employment with, and/or separation from, Phoenix;

**THEREFORE**, in consideration of the covenants and mutual promises contained in this Agreement, the parties agree as follows:

1. **Recitals.**

The above recitals are true and correct and are incorporated herein by reference for all purposes.

2. **Obligations of Phoenix.**

In consideration of Marcelon's obligations set forth below and to avoid any further expenses associated with the costs of litigation:

a.  Phoenix agrees that, along with other good and sufficient consideration for this Agreement, Marcelon will be paid, within twenty (20) business days of (1) Marcelon's execution of this Agreement, and predicated on Marcelon not revoking the Agreement, as set forth in paragraph 6(f), *infra*, and (2) the Court's entry of an order approving this settlement agreement and full dismissal of this Action with prejudice, total funds in the gross amount of Nine Thousand Dollars and Zero Cents ($9,000.00) (the "Settlement Funds"), which shall be issued as follows:

(i)  one check made payable to Istony Marcelon in the gross amount of $2,500.00, representing all of Mr. Marcelon's alleged unpaid overtime wages, for which Marcelon will receive a Form W-2;

Marcelon
Phoenix 

1

  (ii) one check made payable to Istony Marcelon in the amount of $2,500.00, representing all of Mr. Marcelon's alleged liquidated damages, for which Marcelon will receive a Form 1099; and

  (iii) one check made payable to Bober & Bober, P.A., in the $4,000.00 representing all fees and costs incurred in this matter. The Parties hereto agree that the amount negotiated for attorneys' fees was negotiated separately from the amounts paid to Plaintiff, and did not adversely affect Marcelon's recovery.

  Marcelon expressly agrees to be solely responsible for any tax liability that may result from payment of any non-wage Settlement Funds, and expressly acknowledges that Phoenix is not liable in any way for any such tax consequences of this settlement. Marcelon agrees to defend, indemnify, and hold harmless Phoenix against any loss or liability whatsoever, including reasonable attorneys' fees, incurred in any action or proceeding, before any court, agency, or arbitrator, to recover any unpaid taxes, penalties, or forfeitures related to the payment of the non-wage checks identified in this Paragraph.

 b. As further consideration, Phoenix agrees that if it is contacted by a prospective employer about Marcelon, it will provide the following information: the dates of Marcelon's employment and the last position he held (Maintenance). Marcelon promises that he will advise all prospective employers to contact Sheldon "Shelly" Goldberg, Office: (954) 640-7070, Email: shelly@phoenixfla.com, or his successor, who shall only respond in writing to such inquiries.

 c. Sheldon "Shelly" Goldberg shall not disparage Marcelon, directly or indirectly, or say anything negative about Marcelon including, but not limited to, members of the press and media, present and former employees of Phoenix, or any other third persons. As permitted by law such non-disparagement shall expressly include any comments, postings or other communications on social media.

 d. Pursuant to *Lynn's Food Stores, Inc. v. U.S. Dep't. of Labor*, 69 F.2d 1350, 1352 (11th Cir. 1982), the parties shall file a Joint Motion for Settlement Approval and Proposed Order Dismissing this Action, and seek the retention of jurisdiction to enforce this Agreement.

 e. <u>Release of Plaintiff</u>

 The Defendant, on its own behalf and on behalf of each of its successors and assigns, and affiliates (if any), hereby release Marcelon of all claims based in law, equity or otherwise, whether direct or contingent, liquidated or unliquidated, accrued or unaccrued, known or unknown, suspected or unsuspected, actual or potential, asserted or unasserted, patent or latent, matured or unmatured, which the Defendant now owns or holds, have at any time owned or held, or may in the future discover that it had owned or had held against Marcelon. This Agreement is intended to release any and all claims against Marcelon as of the date of this Agreement, without exception.

Marcelon  
Phoenix 

2

3. **Obligations of Marcelon.**

With the sole exception of Marcelon's workers' compensation claims asserted by Marcelon prior to the execution of this Agreement, Marcelon, on behalf of himself, his heirs, executors, administrators, successors, and assigns and all persons who may have a cause of action through him ("Marcelon") completely and forever releases Phoenix and its parents, subsidiaries, affiliates, divisions, successors and assigns, insurers and reinsurers, past and present directors, officers, attorneys (including outside counsel), and employees, and their respective heirs and personal representatives and any related or affiliated entities (collectively, "Phoenix") from any and all claims, known or unknown, including, without exception, those claims that were or could have been asserted in the Action and any other claims arising out of Marcelon's former employment with Phoenix and the separation therefrom, including, but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act ("ADEA"), as amended, and the Older Workers Benefit Protection Act; the Civil Rights Act of 1991; 42 U.S.C. § 1981; the Employee Retirement Income Security Act of 1974, as amended; the Family and Medical Leave Act; the Americans with Disabilities Act of 1990, as amended; the Rehabilitation Act of 1973; the Equal Pay Act; the National Labor Relations Act; the Occupational Safety and Health Act; the Consolidated Omnibus Budget Reconciliation Act; the Genetic Information Non-Discrimination Act of 2008; the Pregnancy Discrimination Act of 1978; the Immigration Reform and Control Act; the Workers Adjustment and Retraining Notification Act; the Fair Credit Reporting Act; Florida Wage Discrimination Law – Fla. Stat. § 448.07; Florida Equal Pay Law – Fla. Stat. § 725.07 and Fla. Stat. Ann. § 448.07; the Florida AIDS Act – Fla. Stat. § 110.1125, § 381.00 and § 760.50; the Florida Domestic Violence Leave Law; Florida Preservation and Protection of the Right to Keep and Bear Arms in Vehicles Act; Florida Discrimination on the Basis of Sickle Cell Trait Law – Fla. Stat. § 448.075 et seq.; Florida OSHA – Fla. Stat. Ann. § 442.018(2); the Florida Civil Rights Act of 1992; Fla. Stat. § 440.205; the Florida Minimum Wage Act; the Florida Whistle Blower's Act; Fla. Stat. § 448.08; any applicable Florida statutes or local ordinances; all laws that govern discrimination involving religion, color, race, sex, pregnancy, sexual harassment, national origin, marital status, genetic information, age, retaliation, handicap, and/or disability; and any other statutory, common law, or public policy claim, whether in tort (including, without limitation, any claim for misrepresentation or fraud, assault, battery, intentional infliction of emotional distress, tortious interference with employment, defamation, invasion of privacy, negligence, or negligent hiring, retention, or supervision) or contract; whether federal, state, or local; whether in law or in equity; whether of any type whatsoever from the beginning of the world to these times present. Marcelon's complete release additionally includes, without limitation, any and all claims for back pay, front pay, attorneys' fees, costs, and expenses. Marcelon expressly intends this release to reach to the maximum extent permitted by law. The above list of statutes is meant to be illustrative, not exhaustive. However, nothing in this Agreement shall be construed to prevent Marcelon from enforcing his rights under this Agreement or from asserting claims for his accrued, vested benefits under any employee benefit plans in accordance with the terms of such plans and applicable law. If any claim is not subject to release, to the extent permitted by law, Marcelon waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party or a proceeding based on such a claim in which Phoenix is a party.

Marcelon
Phoenix 

3

Marcelon warrants that, other than the Action, neither he, nor anyone acting on his behalf, has filed any civil action, suit, arbitration, administrative charge or legal proceeding, whether in court or with an administrative agency, against Phoenix and he has not made any assignment or pledge to anyone of any claim against Phoenix. Marcelon further agrees that should any person, organization, or other entity file, charge, claim, sue or cause or permit to be filed any civil action, suit or legal proceeding involving any matter occurring at any time in the past against Phoenix, he will not seek nor accept any personal relief in such civil action, suit or legal proceeding. However, nothing in this Agreement precludes Marcelon from testifying, assisting or participating in any investigation, hearing or proceeding conducted by the EEOC or equivalent agency. Marcelon, waives any right to monetary or other recovery should any claim be pursued by any person, organization or other entity against Phoenix on his behalf arising out of or related to Marcelon's employment or separation from Phoenix.

Notwithstanding anything to the contrary anywhere in this Agreement, nothing in this Agreement shall affect Marcelon's claim for workers' compensation benefits, pending prior to the execution of this Agreement, against Defendant, nor shall anything herein impede his ability to pursue such workers' compensation benefits only.

The Parties intend this Agreement is intended to be a full and complete release of all claims against each other. If the Parties nevertheless initiates a lawsuit against each other in violation of this Agreement, the Parties shall be entitled to damages from one another, including, without limitation, attorneys' fees and costs incurred in enforcing this Agreement.

    a.    Neither Marcelon nor anyone else acting on Marcelon's behalf shall disparage Phoenix or say anything negative about Phoenix including, but not limited to, members of the press and media, present and former employees of Phoenix, or any other third persons. As permitted by law such non-disparagement shall expressly include any comments, postings or other communications on social media.

    c.    If Marcelon should be subpoenaed by a court or administrative agency of competent jurisdiction to testify about his employment with Phoenix or this Agreement, or to produce this Agreement or other documents related to or about his employment with Phoenix, then Marcelon shall be allowed to honor the subpoena as required by law, but only after he has first given notice to: Lindsay M. Massillon, Esq., LMassillon@fowler-white.com; (305) 789-9281 (phone), or her designee, first telephonically within a reasonable time after being served with the subpoena, and as soon thereafter as possible in writing, including a copy of the subpoena, and in any event, before Marcelon testifies or produces any documents in response to the subpoena.

    d.    Except for workers' compensation claims asserted by Marcelon prior to the execution of this Agreement, Marcelon further acknowledges that, after payment of the Settlement Funds, he will not pursue any claims for any other wages (including any overtime), bonuses, and compensation to which he was entitled by virtue of his former employment with

Marcelon  
Phoenix 

4

Phoenix, as well as any and all leave or other benefits to which he may have been entitled by virtue of his former employment with Phoenix and that, by signing this Agreement, he forever waives any right to any compensation (including any overtime), severance, leave of absence benefits or other payments of any kind from Phoenix. Marcelon represents that he will not seek future employment with Phoenix, and he understands that Phoenix will not employ him if he does seek such employment.

     e.    Nothing herein shall release Phoenix's ability to enforce the terms of this Agreement.

4. **No Admission of Liability.**

The parties acknowledge that this Agreement is not an admission of liability or wrongdoing by anyone, but instead reflects the parties' desire to reach a mutual agreement concerning Marcelon's separation of employment from Phoenix and resolve the matter without additional legal fees and expenses. Phoenix denies any wrongdoing or violation of law. Marcelon forever waives all rights to assert that this Agreement was the result of a mistake in law or in fact. Further, Marcelon forever waives all rights to assert that any or all of the legal theories or factual assumptions used for negotiating purposes are for any reason inaccurate or inappropriate.

**5.** **Medicare.**

The parties have fully considered Medicare's interest, pursuant to the Medicare Secondary Payer rules, and, in doing so, Marcelon has declared that this claim does not involve any illness, injury, incident or accident in which medical expenses were incurred. Further, Marcelon affirms that he is not Medicare eligible as of the date of execution of this Agreement. This affirmation is a material term of this Agreement and without which Marcelon would not have entered into this Agreement. Furthermore, notwithstanding any provision herein to the contrary, Marcelon does not release any claim he may have against Phoenix for any medical expenses paid by Medicare on his behalf. Accordingly, Medicare has no interest in the payment under this Agreement. If Medicare (or the agency representing Medicare's interest) later determines that it does have an interest in the payment to his under this Agreement, Marcelon will indemnify Phoenix as soon as possible for any payments and/or penalties Phoenix makes to Medicare (or the agency collecting on behalf of Medicare) as a result of the payment under this Agreement.

6. **The ADEA.**

**In accordance with the requirements of the Age Discrimination in Employment Act ("the ADEA"), as amended by the Older Worker Benefit Protection Act of 1990, by signing this Agreement and initialing each page, Marcelon certifies that he understands this Agreement and acknowledges the following:**

(a)    He has carefully read and fully understands all of the provisions of this Agreement;

Marcelon _____<br>
Phoenix 

5

(b) He understands and agrees that he has been given a reasonable period of time (up to 21 days) from receipt of this Agreement to consider its terms before signing it;

(c) He has been encouraged to review this Agreement with an attorney of his choice and he, in fact, did so;

(d) He understands that this Agreement does not cover rights or claims that may arise after he signs this Agreement;

(e) He agrees to the terms of this Agreement knowingly, voluntarily, and without intimidation, coercion or pressure and intend to be legally bound by this Agreement; and

(f) He is advised and understands that after he signs this Agreement, he has seven (7) days from the date he signs the Agreement, to revoke the release of any age discrimination claim ("the Waiting Period"). ANY REVOCATION WITHIN THIS SEVEN DAY PERIOD MUST BE SUBMITTED IN WRITING TO: (1) LINDSAY M. MASSILLON, ESQ., FOWLER WHITE BURNETT, P.A., 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131, FAX NO. 305-728-7554, AND (2) STATE: I HEREBY REVOKE MY ACCEPTANCE OF OUR SETTLEMENT AGREEMENT." THE REVOCATION MUST BE PERSONALLY DELIVERED OR SENT BY FACSIMILE AS STATED ABOVE. MARCELON UNDERSTANDS THAT IN THE EVENT HE EXERCISES HIS RIGHT OF REVOCATION, THIS AGREEMENT SHALL BECOME NULL AND VOID IN ITS ENTIRETY AND THE AGREEMENT IS NEITHER EFFECTIVE NOR ENFORCEABLE UNTIL THE EXPIRATION OF THE WAITING PERIOD.

7. **General Terms.**

a. The parties affirm that the terms stated in this Agreement are the only consideration for them to sign this Agreement, and no other promise or agreement of any kind has been made to or with them by any person or entity whomsoever to cause them to execute this Agreement, and that they fully understand the meaning and intent of this Agreement, including but not limited to its final and binding effect. This Agreement contains the entire agreement between the parties and replaces any and all prior contracts, agreements, or understandings between the parties arising out of or relating to Marcelon's employment with, and separation from, Phoenix. This Agreement may only be changed in a writing signed by both Phoenix and Marcelon.

b. This Agreement shall be construed, enforced and interpreted in accordance with the laws of the State of Florida, without regard to Florida's conflict of laws principles. The Parties shall request, as a condition of settlement, that the U.S. District Court retain jurisdiction to enforce the terms of this Agreement. In the event the Court declines to retain jurisdiction, the exclusive venue for any action to enforce or construe the Agreement shall be in Broward County, Florida. Marcelon specifically consents to personal jurisdiction in this venue. **THE PARTIES**

Marcelon _____
Phoenix 

6

SPECIFICALLY WAIVE ANY RIGHT TO A JURY TRIAL IN THE EVENT OF A LEGAL ACTION TO ENFORCE THIS AGREEMENT.

      c.     If one or more provisions of this Agreement is held to be unenforceable, the remaining provisions nonetheless shall be enforced to the maximum extent possible.

      d.     If any legal action, proceeding or hearing is brought by any party to this Agreement to enforce the terms and conditions of this Agreement, then the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.

      e.     This Agreement is binding upon, and shall inure to the benefit of, the parties and their respective heirs, executors, administrators, successors and assigns.

8.    **Counterparts.**

This Agreement may be executed in counterparts, and if so executed each such counterpart shall have the force and effect of an original. The person(s) signing this Agreement on behalf of Phoenix is authorized to do so.

**ISTONY MARCELON AFFIRMS THAT: (1) HE HAS CAREFULLY READ THIS AGREEMENT AND KNOWS AND UNDERSTANDS ITS CONTENTS, (2) HE HAS BEEN ADVISED OF HIS RIGHT TO CONSULT WITH AN ATTORNEY ABOUT THIS AGREEMENT, (3) HE HAS BEEN GIVEN A REASONABLE PERIOD OF TIME WITHIN WHICH TO CONSIDER THIS AGREEMENT, (4) HE ENTERS INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY, AND (5) HE INDICATES HIS CONSENT AND AGREEMENT BY INITIALING EACH PAGE AND SIGNING THE SIGNATURE PAGE.**

_____ (Marcelon)
ISTONY MARCELON
Date: _____

Phoenix Management Services, Inc.    (Phoenix)

By: _____
Name: Sheldon Goldberg
Title: President
Date: 8/17/20

Marcelon _____
Phoenix 

7

**Twenty One (21) Day Waiver**

I, ISTONY MARCELON, hereby acknowledge that I have been granted up to 21 days to consider this agreement, and that I have elected to waive the remaining portion of that period and execute the document on this date.

_____
ISTONY MARCELON                Date

Marcelon
Phoenix